## THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**KENEISHA WASHINGTON,**

    *Plaintiff,*

    v.

**CAPITAL COMMUNITY**
**BANK, INC.,**
**CLARITY SERVICES, INC.,**
**CREDITNINJA**
**LENDING, LLC,**
**EXPERIAN INFORMATION**
**SOLUTIONS, INC.,**
and
**TOTAL LOAN SERVICES, LLC,**

    *Defendants.*

Case No.: 8:25-cv-00055

## COMPLAINT AND DEMAND FOR JURY TRIAL

**COMES NOW**, the Plaintiff, KENEISHA WASHINGTON ("Ms. Washington"), by and through her undersigned counsel, Seraph Legal, P.A., and complains of the Defendants, CAPITAL COMMUNITY BANK, INC. ("Capital"), CLARITY SERVICES, INC. ("Clarity"), CREDITNINJA LENDING, LLC ("CreditNinja"), EXPERIAN INFORMATION SERVICES, INC. ("Experian"), and TOTAL LOAN SERVICES, LLC ("Total Loan") (collectively, the "Defendants"), and in furtherance thereof states as follows:

## PRELIMINARY STATEMENT

1.    This is an action brought by Ms. Washington against CreditNinja and Total Loan for violations of the Electronic Funds Transfer Act, 15 U.S.C. § 1693, *et*

*seq.* ("EFTA") and the *Florida Consumer Collection Practices Act*, § 559.55, Fla. Stat., *et seq.* ("FCCPA"), and against all Defendants for violations of the Racketeer Influence and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq.* ("RICO") and the *Civil Remedies for Criminal Practices Act*, § 772.101, Fla. Stat. ("CRCPA").

## JURISDICTION AND VENUE

2.    Subject matter jurisdiction arises under the EFTA, 15 U.S.C. § 1693m(g), and RICO, 18 U.S.C. § 1965, as the EFTA and RICO are federal statutes.

3.    This Court has supplemental jurisdiction for Ms. Washington's FCCPA and CRCPA claims under 28 U.S.C. § 1367.

4.    The Defendants are subject to this Court's jurisdiction pursuant to § 48.193, Fla. Stat. and Fed. R. Civ. P. 4(k).

5.    Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. § 1391(b)(2) because the Defendants committed the acts of which Ms. Washington complains within Polk County, Florida which is in the Middle District of Florida.

## PARTIES

### Ms. Washington

6.    Ms. Washington is a natural person over the age of eighteen residing in the city of Winter Haven, Polk County, Florida and is *sui juris*.

7.    Ms. Washington is a *Consumer* as defined by the FCCPA, § 559.55(8), Fla. Stat.

**Capital**

8.     Capital is a Utah corporation with a principal business address of 3280 N. University Avenue, Provo, UT 84604.

9.     Capital's Utah registered agent is Matthew Field, 3280 N. University Avenue, Provo, UT 84604.

**Clarity**

10.     Clarity is a Delaware corporation with a principal business address of 475 Anton Blvd., Costa Mesa, CA 92626.

11.     Clarity is registered to conduct business in the State of Florida, where its registered agent is CT Corporation System, 1200 South Pine Island Rd., Plantation, FL 33324.

**CreditNinja**

12.     CreditNinja is a Delaware limited liability company with a principal business address of 222 S. Riverside Plaza, Suite 2200, Chicago, IL 60606.

13.     CreditNinja is registered to conduct business in the State of Florida, where its registered agent is Corporation Service Company, 1201 Hays Street, Suite A, Tallahassee, FL 32301.

14.     Per the State of Florida's Division of Corporations, CreditNinja was previously known only as KMD Partners, LLC ("KMD") prior to its application for a name change in December 2021.

**Experian**

15.    Experian is an Ohio corporation, with a principal business address of 475 Anton Boulevard, Costa Mesa, CA 92626.

16.    Experian is registered to conduct business in the State of Florida, where its registered agent is CT Corporation System, 1200 South Pine Island Road, Plantation, FL 33324.

**Total Loan**

17.    Total Loan is an Ohio limited liability company with a principal business address of 205 Sugar Camp Circle, Dayton, OH 45409.

18.    Total Loan's Ohio registered agent is CH&K Agent Service, Inc., 1 South Main Street, Suite 1300, Dayton, OH 45402.

**FACTUAL ALLEGATIONS**

**CreditNinja Makes Illegal, Unenforceable Loan**

19.    On or about November 21, 2024, CreditNinja and Total Loan made an $800 loan to Ms. Washington through CreditNinja.com (the "Loan"). **SEE PLAINTIFF'S EXHIBIT A.**

20.    Ms. Washington took out the Loan from her home in Florida and electronically signed the loan documents in Florida. **SEE PLAINTIFF'S EXHIBIT B.**

21.     CreditNinja and Total Loan transferred the Loan proceeds to Ms. Washington's bank account that she maintains in Polk County, Florida, and debited payments from this same account.

22.     The stated annual percentage rate ("APR") for the Loan was 225%. **SEE PLAINTIFF'S EXHIBIT A.**

23.     Additionally, CreditNinja and Total Loan charged a $40 "loan origination fee" that they deducted from Ms. Washington's Loan, resulting in her only receiving $760.

24.     Beginning on December 24, 2024, CreditNinja and Total Loan began withdrawing $198.13 from Ms. Washington's checking account in Florida.

25.     Ms. Washington utilized the proceeds from the Loan for personal and household expenses.

26.     The balance on the Loan therefore meets the definition of *Debt* or *consumer debt* under the FCCPA, § 559.55(6), Fla. Stat.

27.     The State of Florida has long recognized that lending money at usurious interest rates is immoral, harmful, and contrary to public policy.[1]

28.     § 687.02(1), Fla. Stat. renders any loan or extension of credit made at annual interest rates over 18% per year usurious.

---

[1] E.g., "The effect of such a loan contract is to make it wholly void and subject to cancellation by a court of equity. Furthermore, the statute makes the lending of money on such terms a criminal offense and a contract of that nature is therefore void as against the public policy of the state as established by its Legislature." *The Richter Jewelry Co. v. Schweinert*, 125 Fla. 199, 220 (Fla. 1936).

29.    § 687.071(2), Fla. Stat. renders any loan or extension of credit made at annual interest rates over 25% criminally usurious.

30.    § 687.071(7), Fla. Stat. renders any criminally usurious loan void and unenforceable.

31.    Long-standing public policy in Florida confirms the impossibility of the alleged debt. *Richter Jewelry Co. v. Schweinert*, 169 So. 750, 758-59 (Fla. 1935) (criminally usurious loans are "void as against the public policy of the state as established by its Legislature.").

32.    Any person who willfully makes a criminally usurious loan, in addition to subjecting themselves to criminal sanctions, forfeits the right to collect payment for the loan. *Richter Jewelry Co.*, 169 So. at 752.

33.    Indeed, even the recovery of a loan's principal balance when made at usurious rates is impermissible under Florida law. *Rollins v. Odom*, 519 So. 2d 652, 656 (Fla. 1st DCA 1988).

34.    The purpose of the usury statutes is to protect the needy borrower by penalizing the unconscionable money lender. *Stubblefield v. Dunlap*, 4 So. 2d 519 (Fla. 1941); *see also Pushee v. Johnson*, 166 So. 847 (Fla. 1936).

35.    Florida has taken usury one step further in the consumer loan context through its passage of the Consumer Finance Act, § 516, Fla. Stat. (the "Act").

36.    The Act requires licensure and state oversight for lenders issuing loans to Florida consumers in the amount of $25,000 or less. § 516.02(1), Fla. Stat.

37.    The Act further restricts the interest and fees which a licensed consumer finance company may charge.

38.    § 516.02(c), Fla. Stat. establishes that any loan which fails to comply with the Act is unenforceable in Florida *even if valid wherever made.*

39.    Florida has made it abundantly clear that to enforce a consumer loan against a Florida resident, a lender must be licensed in Florida and comply with the Act.

40.    Ms. Washington's Loan charged an annual interest rate exceeding 25%, which is greater than the Act permits.

41.    Neither CreditNinja nor Total Loan is licensed as a Consumer Finance Company in Florida.

42.    The Loan is thus unenforceable against Ms. Washington regardless of whether it was valid under Utah law or wherever else it might have been made.

43.    The Loan the Defendants issued to Ms. Washington charged an annual percentage rate that vastly exceeds Florida's maximum lawful rate, therefore any attempts to collect the Loan's outstanding balance constitutes a felony pursuant to § 687.071(3), Fla. Stat.

44.    Because the Loan is subject to an annual interest rate which vastly exceeds the 25% limit § 687.071(2), Fla. Stat. proscribes, the Loan is void *ab initio* and unenforceable in Florida pursuant to § 687.071(7), Fla. Stat.

45.    The Loan and any balance due is therefore an *unlawful debt* pursuant to § 772.102(2)(a)(3), Fla. Stat.

46.    The Defendants made multiple collection communications to Ms. Washington while she was in Florida via e-mail and text message.

47.    These messages were each a "communication" per § 559.55(2), Fla. Stat.

48.    CreditNinja and Total Loan reported the Loan to Clarity, a nationwide Credit Reporting Agency ("CRA"). **SEE PLAINTIFF'S EXHIBIT C.**

### The Defendants' Rent-A-Bank Model

49.    CreditNinja, a Chicago-based "FinTech" business which makes loans to consumers at interest rates illegal in the vast majority of states, operates CreditNinja.com.

50.    CreditNinja Lending, LLC, owns the CreditNinja trademark, not Capital.  **SEE PLAINTIFF'S EXHIBIT D.**

51.    The CreditNinja.com consumer website notes the content is "© 2024 CreditNinja Lending, LLC. All Rights Reserved." **SEE PLAINTIFF'S EXHIBIT E.**

52.    CreditNinja issues loans in its own name in states which do not strictly prohibit triple-digit interest rates for consumer loans.

53.    However, in States like Florida that render CreditNinja's interest rates criminally usurious, CreditNinja partners with Capital.

54.    Capital is state-chartered bank with a single branch in Utah, which has no maximum legal interest rate.

55.    12 U.S.C. § 1831d(a) permits a federally insured, state-chartered bank like Capital to export the interest rates of its home state.

56.     Purportedly, Capital originates the loan and then assigns or otherwise transfers the loan to CreditNinja, which then "services" the loan.

57.     Total Loan acts as a collection agency and servicer for CreditNinja by collecting interest payments and providing support to CreditNinja.

58.     Capital has no meaningful involvement in the lending process, as CreditNinja designs and manages all terms, underwriting criteria, interest rates, policies, procedures, and servicing for the loans, not Capital.

59.     Although the loan documents list Capital as the lender, CreditNinja is the true lender for the loans.

60.     CreditNinja provides the bulk of the capital to fund the loans and undertakes the risk should the loans fail to perform.

61.     CreditNinja simply provides Capital with a small, but guaranteed fee per loan in exchange for Capital providing its name and status as an FDIC-insured bank to CreditNinja.

62.     For its part in the process, CreditNinja receives the vast majority of the profits from the loans.

63.     Such arrangements are often to referred to as "rent-a-bank" schemes.

64.     In a typical "rent-a-bank" scheme, the nonbank and its affiliates initiate the relationship, propose that the bank outsource all aspects of the loan process to the nonbank, the nonbank provides the factors necessary to issue the loans, and the nonbank then acquires the majority of the economic interest in the loans while providing a modest, but guaranteed profit for the bank with each loan.

65.    Tellingly, Capital generates the vast majority of its consumer lending business through "partnership" agreements with non-bank lenders like CreditNinja.[2]

66.    When CreditNinja reported the Loan to Clarity, it listed "Credit Ninja" as the lender. **SEE PLAINTIFF'S EXHIBIT C.**

67.    When CreditNinja obtained a credit report from Clarity regarding Ms. Washington in connection with her loan application, the company that Clarity listed as making the inquiry was "Credit Ninja/FMS." **SEE PLAINTIFF'S EXHIBIT F.**

68.    The inquiry did not mention Capital.

69.    As a result of the Defendants' collection efforts, Ms. Washington has repaid money towards the void Loan.

70.    CreditNinja also made multiple other collection attempts via e-mail, text message, and postal mail in the last 24 months.

### CreditNinja Violates the EFTA By Requiring Electronic Payment

71.    When Ms. Washington applied for her Loan, CreditNinja required her to provide her bank account and routing numbers so CreditNinja could automatically debit payments from her bank account electronically.

72.    CreditNinja only accepts online applications, and the website will not allow an application to proceed without the consumer supplying his or her bank account information.

---

[2] As but one example, Capital serves as one of three sham lenders for OppLoans, marketed by Opportunity Financial, which makes short-term, unsecured loans to Florida consumers at roughly 150% interest rates.

73.    When CreditNinja approved Ms. Washington for a loan, it provided her with several documents to electronically sign, including a Loan Agreement and an "EFT Authorization Agreement."

74.    The "voluntary electronic debit payment authorization" includes a provision whereby CreditNinja required Ms. Washington to consent to CreditNinja initiating ACH debits from her account to make the required bi-weekly loan payments.

75.    While couched as voluntary, CreditNinja will not approve a loan application which does not contain a signed, "voluntary" electronic payment agreement.

76.    Moreover, a consumer can only terminate the electronic funds transfer authorization *after* CreditNinja originates the loan.

77.    CreditNinja's business model of making unsecured subprime consumer loans depends on being able to debit loan payments concurrently to when the consumer receives his or her paycheck, thereby being the "first in line" to receive proceeds from the consumer's paycheck.

78.    Indeed, CreditNinja requires loan applicants to disclose their pay schedules to CreditNinja to facilitate CreditNinja's capture of payments.

79.    Under Regulation E, the implementing regulation of the EFTA, "[n]o financial institution or other person may condition an extension of credit to a consumer on the consumer's repayment by preauthorized electronic fund transfers...." 12 C.F.R. § 205.10(e)(1); 15 U.S.C. § 1693k(1).

80.    Despite the ostensibly "voluntary" electronic payment agreement, in reality CreditNinja conditioned the Loan's approval on Ms. Washington's providing consent to ACH debits or debit card payments, as with all the other consumers it serves.

## Clarity & Experian Knowingly Facilitate Loansharking

81.    Clarity is a nationwide CRA which primarily services the needs of online payday lenders like CreditNinja, i.e., lenders making short-term, small-dollar loans at triple-digit interest rates.

82.    Clarity maintains terabytes of proprietary data specifically tailored to assist online, subprime lenders in evaluating potential borrowers, including consumers' checking account histories, employment and salary data, and past payday loan experiences.

83.    Clarity then supplements the data with information from its parent company, Experian, one of the "Big 3" nationwide CRAs, as well as data from other specialty CRAs.

84.    Clarity merges its own data with information it obtains from Experian into one report, which it then sells to online lenders.

85.    Experian sold a consumer report to Clarity on behalf of CreditNinja on November 20, 2024, which corresponds with the date that Ms. Washington applied for her Loan. **SEE PLAINTIFF'S EXHIBIT G.**

86.    Once Experian provided its supplemental consumer report to Clarity, Clarity then combined the data it received from Experian and incorporated it into

reports it sold to CreditNinja on November 20, 2024. **SEE PLAINTIFF'S EXHIBIT F.**

87.    Both Experian and Clarity have extensive policies in place to conduct due diligence on potential new customers, which in many cases include sending an investigator to the lender's primary business office.

88.    Experian and Clarity also examine the states in which the lender conducts business and the lender's website, including pages which show the interest rates, terms, and fees.

89.    Clarity has also produced several detailed reports for the online lending industry, including its 2019 *Alternative Financial Services Lending Trends Insights into the Industry and its Consumers* in which it claimed to have analyzed 350 million loan applications and 25 million loans, most of which were small-dollar, short-term loans through online lenders.

90.    Numerous consumers have filed lawsuits against Clarity for its practice of furnishing credit reports to online payday lenders with sham rent-a-bank schemes like CreditNinja.

91.    When it provided a consumer credit report to CreditNinja regarding Ms. Washington, Clarity knew, or should have known, the data it was providing was connected with a loan containing a triple-digit interest rate.

92.    Absent the trove of data Clarity knowingly supplied to CreditNinja, no loan would have been made to Ms. Washington.

93.    Beyond this, Clarity accepts tradeline data from CreditNinja including loan amounts, payments due, and payment history.

94.    Clarity also periodically receives disputes from consumers about CreditNinja's tradeline data, alleging the loans are usurious and unenforceable.

95.    Moreover, Clarity spends what is likely hundreds of thousands of dollars per year promoting itself and its services directly to online lenders like CreditNinja.

96.    Clarity operates as a *de facto* collection agency for CreditNinja, since the presence of the CreditNinja tradelines on the consumer's credit report act as both a carrot and a stick: payment of the usurious loan maintains the consumer's credit rating and score, but failure to pay it comes with the caveat that negative data will report, further exacerbating the plight of a consumer already under dire financial circumstances who was forced to turn to an online loan shark to make ends meet.

97.    For years, courts have recognized the power of credit reporting to procure payment. A creditor's "ability to report on the credit habits of its customers is a powerful tool designed, in part, to wrench compliance with payment terms." *Rivera v. Bank One*, 145 F.R.D. 614, 623 (D.P.R. 1993).

98.    Experian has had numerous lawsuits filed against it for the same conduct of selling reports to other CRAs on behalf of lenders who make loans at interest rates considered usurious in most states, including Florida.

99.    Therefore, Experian knew or should have known it was selling credit reports to Clarity on behalf of non-bank lenders making loans at illegal interest rates.

100.    Ms. Washington has been damaged in that she made payments towards the Loan's outstanding balance, which is void and unenforceable pursuant to Florida law.

101.    Upon learning of the Loan's illegality and that she was a target of CreditNinja and Capital's scheme to issue usurious loans, Ms. Washington suffered severe emotional distress.

102.    Ms. Washington's credit scores have also been significantly impaired due to CreditNinja's reporting the Loan to the CRAs.

103.    Ms. Washington has hired the undersigned law firm to represent her in this matter and has assigned it her right to fees and costs.

**COUNT I**
**CREDITNINJA & TOTAL LOAN'S JOINT & SEVERAL VIOLATIONS OF THE FCCPA, § 559.72(9), FLA. STAT.**

104.    Ms. Washington incorporates Paragraphs 1 – 103 as if fully restated herein.

105.    CreditNinja and Total Loan attempted to collect payments from Ms. Washington towards the Loan's outstanding balance, thereby asserting they had the legal right to do so.

106.    The Loan constitutes an unlawful debt pursuant to § 772.102(2)(a)(3), Fla. Stat.

107.    Due to the Loan's illegal nature, CreditNinja and Total Loans had no legal right to collect its outstanding balance from Ms. Washington.

108.    CreditNinja and Total Loan's actions were willful, intentional, and performed with the express purpose of collecting an unenforceable debt from Ms. Washington and profiting therefrom.

109.    CreditNinja and Total Loan both knew of the Loan's illegal nature, as they have gone to great lengths to avoid Florida law through their use of a "rent-a-bank" scheme.

**WHEREFORE**, Ms. Washington respectfully requests this Honorable Court enter an award against CreditNinja and Total Loan, jointly and severally, for:

a.    Actual damages pursuant to § 559.77(2), Fla. Stat.;

b.    Statutory damages of up to $1,000.00 pursuant to § 559.77(2), Fla. Stat.;

c.    Reasonable costs and attorneys' fees pursuant to § 559.77(2), Fla. Stat.; and,

d.    Such other relief that the Court deems just and proper.

## COUNT II
## DEFENDANTS' JOINT & SEVERAL VIOLATIONS OF THE CRCPA, § 772.103(3), FLA. STAT.

110.    Ms. Washington incorporates Paragraphs 1 –103 as if fully restated herein.

111.    Through their participation in the CreditNinja scheme, the Defendants constitute an "enterprise" under CRCPA, § 772.102(3), Fla. Stat.

112.    The Defendants each associated with the enterprise and participated in the enterprise's affairs, which existed for the purpose of collecting unlawful debt.

113.    The Defendants' participation in the enterprise violated § 772.103(3), Fla. Stat. and caused Ms. Washington to repay amounts towards the unlawful Loan's outstanding balance.

**WHEREFORE**, Ms. Washington respectfully requests this Honorable Court enter an award against the Defendants, jointly and severally, for:

a.    Threefold the amount of actual damages, or, in the alternative, the statutory minimum of $200, whichever is greater, pursuant to § 772.104(1), Fla. Stat.;

b.    Reasonable costs and attorneys' fees pursuant to § 772.104(1), Fla. Stat.; and,

c.    Any other relief this Court deems equitable and proper under the circumstances.

## COUNT III
## <u>DEFENDANTS' JOINT & SEVERAL VIOLATIONS OF THE CRCPA, § 772.103(4), FLA. STAT.</u>

114.    Ms. Washington incorporates Paragraphs 1 – 103 as if fully restated herein.

115.    The Defendants violated § 772.103(4), Fla. Stat. by conspiring with each other to issue and collect unlawful debts through CreditNinja.

116.    The Defendants each took actions in furtherance of this conspiracy.

117.    At various times, the Defendants have: (a) issued a loan to Ms. Washington; (b) reported Ms. Washington's Loan to Clarity; (c) initiated ACH deposits and withdrawals to and from Ms. Washington's bank account; (d) sold credit

reports to CreditNinja to assist in the loan application process; (e) attempted to collect the Loan's outstanding balance from Ms. Washington via emails to Ms. Washington; and/or (f) claimed ownership of CreditNinja.com to make it appear that a bank was the actual lender.

**WHEREFORE**, Ms. Washington respectfully requests this Honorable Court enter an award against the Defendants, jointly and severally, for:

a.  Threefold the amount of actual damages, or, in the alternative, the statutory minimum of $200, whichever is greater, pursuant to § 772.104(1), Fla. Stat.;

b.  Reasonable costs and attorneys' fees pursuant to § 772.104(1), Fla. Stat.; and,

c.  Any other relief this Court deems equitable and proper under the circumstances.

**COUNT IV**
**DEFENDANTS' JOINT & SEVERAL VIOLATIONS OF**
**RICO, 18 U.S.C § 1962(a)**

118.    Ms. Washington adopts and incorporates Paragraphs 1 – 103 as if fully restated herein.

119.    Through their participation in the CreditNinja scheme, the Defendants constitute an "enterprise" as defined by 18 U.S.C. § 1961(4).

120.     The Loan charged an interest rate far in excess of Florida's maximum permitted rate, and thus the Loan was an "unlawful debt" pursuant to 18 U.S.C. § 1961(6).

121.     The Defendants violated 18 U.S.C § 1962(a) when they received proceeds directly or indirectly from the collection of an unlawful debt, Ms. Washington's CreditNinja Loan, and utilized said proceeds to maintain their ongoing lending enterprise.

122.     The Defendants were aware of the enterprise's goals, and each acted in furtherance of this conspiracy.

123.     Total Loan and CreditNinja operated CreditNinja.com, initiated ACH deposits and withdrawals to and from Ms. Washington's bank account, and attempted to collect the Loan's outstanding balance from Ms. Washington by reporting the Loan to CRAS.

124.     Clarity and Experian both sold credit reports to CreditNinja regarding Ms. Washington to assist with the review of her loan application.

125.     Clarity incorporated tradeline data regarding the Loan in reports it sold regarding Ms. Washington.

126.     Capital claimed ownership of CreditNinja.com loans to make it appear that a bank was the actual lender.

127.     The Defendants' business model goes to great lengths to obfuscate how and by whom loans are made in an attempt to deceive consumers into believing that they have no legal recourse against enforcement.

**WHEREFORE**, Ms. Washington respectfully requests this Honorable Court enter judgment against the Defendants, jointly and severally, ordering:

    a.     Threefold the amount of actual damages;

    b.     Reasonable costs and attorneys' fees pursuant to 18 U.S.C § 1964(c);

    c.     Any other relief this Court deems equitable and proper under the circumstances.

## COUNT V
## DEFENDANTS' JOINT & SEVERAL VIOLATIONS OF RICO, 18 U.S.C § 1962(b)

128.    Ms. Washington adopts and incorporates Paragraphs 1 – 103 as if fully restated herein.

129.    Through their participation in the CreditNinja scheme, the Defendants constitute an "enterprise" as defined by 18 U.S.C. § 1961(4).

130.    The Loan charged an interest rate far in excess of Florida's maximum permitted rate, and thus the Loan was an "unlawful debt" pursuant to 18 U.S.C. § 1961(6).

131.    The Defendants violated 18 U.S.C § 1962(b) when they received proceeds directly or indirectly from the collection of an unlawful debt, Ms. Washington's CreditNinja Loan, and utilized said proceeds to maintain their ongoing lending enterprise.

132.    Total Loan and CreditNinja operated CreditNinja.com, initiated ACH deposits and withdrawals to and from Ms. Washington's bank account, and made

successful collection attempts to force Ms. Washington to repay the Loan by reporting the Loan to the CRAS.

133.    Clarity and Experian both sold credit reports to CreditNinja regarding Ms. Washington in order to assist with the review of her loan application.

134.    Clarity incorporated tradeline data regarding the Loan in reports it sold regarding Ms. Washington.

135.    Capital claimed ownership of CreditNinja.com loans to make it appear that a bank was the actual lender.

136.    The Defendants' business model goes to great lengths to obfuscate how and by whom loans are made in an attempt to deceive consumers into believing that they have no legal recourse against enforcement.

**WHEREFORE**, Ms. Washington respectfully requests this Honorable Court enter judgment against the Defendants, jointly and severally, ordering:

a.      Threefold the amount of actual damages;

b.      Reasonable costs and attorneys' fees pursuant to 18 U.S.C § 1964(c);

c.      Any other relief this Court deems equitable and proper under the circumstances.

### COUNT VI
### DEFENDANTS' JOINT & SEVERAL VIOLATIONS OF
### RICO, 18 U.S.C. § 1962(c)

137.    Ms. Washington adopts and incorporates Paragraphs 1 – 103 as if fully restated herein.

138.    Through their participation in the CreditNinja scheme, the Defendants constitute an *enterprise* as defined by 18 U.S.C. § 1961(4).

139.    The Loan charged an interest rate far in excess of Florida's maximum permitted rate, and thus the Loan was an *unlawful debt* pursuant to 18 U.S.C. § 1961(6).

140.    Total Loan and CreditNinja operated CreditNinja.com, initiated ACH deposits and withdrawals to and from Ms. Washington's bank account, and attempted to collect the Loan's outstanding balance from Ms. Washington by reporting the Loan to CRAS.

141.    Clarity and Experian both sold credit reports to CreditNinja regarding Ms. Washington in order to assist with the review of her loan application and incorporated tradeline date regarding the Loan in reports they sold.

142.    Capital claimed ownership of CreditNinja.com loans to make it appear that a bank was the actual lender.

143.    The Defendants' participation in the enterprise violated 18 U.S.C § 1962(c) and caused Ms. Washington to repay amounts towards the unlawful Loan's outstanding balance.

**WHEREFORE**, Ms. Washington respectfully requests this Honorable Court enter judgment against the Defendants, jointly and severally, ordering:

a.    Threefold the amount of actual damages;

b.    Reasonable costs and attorneys' fees pursuant to 18 U.S.C § 1964(c);

c.    Any other relief this Court deems equitable and proper under the circumstances.

## COUNT VII
## <u>DEFENDANTS' JOINT & SEVERAL VIOLATIONS OF</u>
## <u>RICO, 18 U.S.C § 1962(d)</u>

144.    Ms. Washington adopts and incorporates Paragraphs 1 – 103 as if fully restated herein.

145.    Through their participation in the CreditNinja scheme, the Defendants constitute an e*nterprise* as defined by 18 U.S.C. § 1961(4).

146.    The Loan charged an interest rate far more than Florida's maximum permitted rate, and thus the Loan was an *unlawful debt* pursuant to 18 U.S.C. § 1961(6).

147.    The Defendants conspired with each other to issue and collect unlawful debts through CreditNinja in violation of 18 U.S.C § 1962(d).

148.    Total Loan and CreditNinja operated CreditNinja.com, initiated ACH deposits and withdrawals to and from Ms. Washington's bank account, and attempted to collect the Loan's outstanding balance from Ms. Washington by reporting the Loan to CRAS.

149.    Clarity and Experian both sold credit reports to CreditNinja regarding Ms. Washington in order to assist with the review of her loan applications and incorporated tradeline data regarding the Loan in reports sold regarding Ms. Washington.

150.    Capital claimed ownership of CreditNinja.com loans to make it appear that a bank was the actual lender.

151.    The Defendants each agreed to participate in the conspiracy and agreed to its overall objective to collect unlawful loans through CreditNinja.

**WHEREFORE**, Ms. Washington respectfully requests this Honorable Court enter judgment against the Defendants, jointly and severally, ordering:

a.    Threefold the amount of actual damages;

b.    Reasonable costs and attorneys' fees pursuant to 18 U.S.C § 1964(c);

c.    Any other relief this Court deems equitable and proper under the circumstances.

**COUNT VIII**
**CREDITNINJA & TOTAL LOAN'S JOINT & SEVERAL VIOLATIONS OF THE EFTA, 15 U.S.C. § 1693k(1)**

152.    Ms. Washington incorporates Paragraphs 1 – 103 as if fully restated herein.

153.    CreditNinja and Total Loan conditioned the approval of the Loan on Ms. Washington's agreeing to make electronic payments in violation of 15 U.S.C. § 1693k(1).

154.    Accordingly, CreditNinja and Total Loan are liable to Ms. Washington for her actual damages, statutory damages of $1,000, costs, and attorneys' fees pursuant to 15 U.S.C. § 1693m(a)(2)(A).

**WHEREFORE**, Ms. Washington respectfully requests this Honorable Court enter judgment against CreditNinja and Total Loan, jointly and severally, for:

a.    Statutory damages of $1,000.00 pursuant to 15 U.S.C. § 1693m(a)(2)(A);

b.    Actual damages pursuant to 15 U.S.C. § 1693m(a)(2)(A);

c.     Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1693m(a)(2)(A); and,

d.     Such other relief that this Court deems just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Ms. Washington hereby demands a jury trial on all issues so triable.

Respectfully submitted on January 9, 2025, by:

**SERAPH LEGAL, P. A.**

<u>*/s/ Megan A. Rosenberg*</u>
Megan A. Rosenberg, Esq.
Florida Bar No.: 1005213
MRosenberg@seraphlegal.com
2124 W. Kennedy Blvd., Suite A
Tampa, FL 33606
Tel: 813-567-1230
Fax: 855-500-0705
*Counsel for Plaintiff*

**EXHIBIT LIST**

| | |
|---|---|
| A | Ms. Washington's CreditNinja Loan Agreement, November 21, 2024 - Excerpt |
| B | Ms. Washington's IP Address Showing Location of Loan Application |
| C | Ms. Washington's Clarity Consumer Disclosure, December 31, 2024, CreditNinja Tradeline - Excerpt |
| D | KMD's Trademark Registration for CreditNinja |
| E | CreditNinja.com's Statement: "© 2024 CreditNinja Lending LLC. All Rights Reserved." |
| F | Ms. Washington's Clarity Consumer Disclosure, December 31, 2024, CreditNinja Inquiries – Excerpts |
| G | Ms. Washington's Experian Consumer Disclosure, December 20, 2024, CreditNinja Inquiry - Excerpt |

# PLAINTIFF'S EXHIBIT A
## Ms. Washington's CreditNinja Loan Agreement
## November 21, 2024 - Excerpt

### FEDERAL TRUTH-IN-LENDING DISCLOSURES AND PROMISSORY NOTE

**Loan #:** ▮▮▮
**Borrower:**
Keneisha Washington
▮▮▮▮▮▮▮▮▮
Winter Haven, FL 33880

**Date:** 11/21/2024
**Lender:**
CC Connect, a division of Capital Community Bank
3280 N. University Avenue
Provo, UT 84604
1-855-646-5201 Customer Service for this loan

In the following Federal Truth-in-Lending Disclosures and Promissory Note (the "Note"), "Borrower," "I," "me," and "my" refer to the Borrower who has signed this Note. "Lender," "you" and "your" refer to CC Connect, a division of Capital Community Bank. Capital Community Bank is an FDIC-insured Utah state-chartered bank.

### FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE<br>The cost of my credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost me. | AMOUNT FINANCED<br>The amount of credit provided to me or on my behalf. | TOTAL OF PAYMENTS<br>The amount I will have paid after I have made all payments as scheduled. |
|---|---|---|---|
| **225.00** % | $**983.17** | $**800.00** | $**1,783.17** |

**Your Payment Schedule Will Be:** 8 payments of $198.13 beginning 12/24/2024 and 1 final payment of $198.13 on 08/27/2025 as follows:

| Payment Number | Amount of Payment | When Payment Is Due |
|---|---|---|
| 1 | $198.13 | 12/24/2024 |
| 2 | $198.13 | 01/29/2025 |
| 3 | $198.13 | 02/26/2025 |
| 4 | $198.13 | 03/26/2025 |
| 5 | $198.13 | 04/30/2025 |
| 6 | $198.13 | 05/28/2025 |
| 7 | $198.13 | 06/25/2025 |
| 8 | $198.13 | 07/30/2025 |
| 9 | $198.13 | 08/27/2025 |

**Prepayment Penalty:** If I pay off early, I will not have to pay a penalty.
**Late Fee:** If any payment is late for a period of 10 days or more, a late fee may be imposed in an amount equal to the greater of $15 or 5% of the scheduled installment.
*See the remainder of this document for additional information about nonpayment, default, Lender's right to accelerate maturity of the obligation and prepayment refunds and penalties.*

APR Unit Period:

**Itemization of Amount Financed of $800.00**
| | | |
|---|---|---|
| 1. Amount given directly to you: | | $800.00 |
| 2. Amount paid on your Loan No. n/a with us | | $0.00 |
| 3. Prepaid finance charge (loan origination fee): | | $40.00 |
| 4. Amount paid to Florida Department of Revenue, if applicable*: | | $3.15 |
| 5. Principal Loan Amount (1 + 2 + 3 + 4): | | $843.15 |
| **Amount Financed (5 - 4 - 3):** | | **$800.00** |

**\*Notice to Florida Residents Only:** Florida documentary stamp tax required by law in the amount of $3.15 has been paid or will be paid directly to the Department of Revenue. Certificate of Registration # ▮▮▮

### PROMISSORY NOTE

**Principal Amount:** 843.15                          **Loan Date:** 11/21/2024

**Promise to Pay.** I promise to pay you, or to your order the Principal Amount, plus interest at the rate of 210.83% per year until paid in full. I also agree to pay all other charges provided under this Note.

**Origination Fee.** I hereby agree to pay you a fully earned and non-refundable origination fee of $40.00 due, which is withheld from the loan proceeds, and payable upon the execution of this Agreement.

**Loan Funding.** I authorize the proceeds of this loan payable to me by an ACH credit or wire transfer to the bank account I specify. "My Bank Account Information" below will be the account in which my loan proceeds will be deposited.

My Bank Account Information
Bank Name ▮▮▮
Routing Nu ▮▮▮
Account Number ▮▮▮

**Interest.** Interest will accrue on a daily basis on the unpaid Principal Amount for the number of days outstanding based on a 365 day year. The interest rate and other charges under this Note will never exceed the highest rate or charge allowed by Utah law for this loan. If the amount collected is found to exceed the highest rate or charge allowed, Lender will refund an amount necessary to comply with law. Interest shall continue to accrue on past due amounts as permitted by Utah law. Interest will begin to accrue on the Loan Date set forth above.

**Payments.** I will promptly make the scheduled payment either by (a) if authorized, via automated clearing house debit entry

# PLAINTIFF'S EXHIBIT B
## Ms. Washington's IP Address Showing Location of Loan



## PLAINTIFF'S EXHIBIT C
### Ms. Washington's Clarity Consumer Disclosure, December 31, 2024
### CreditNinja Tradeline - Excerpt

**Clarity Report for WASHINGTON, KENEISHA**

12/31/2024

**Consumer**

Name
WASHINGTON, KENEISHA

Address
████████████
WINTER HAVEN, FL 33880

Reference Number
██████

**Notices**

Enclosed is a copy of your Clarity Credit Report and/or Clarity Credit Score, a "Summary of Your Rights Under the Fair Credit Reporting Act", and any applicable state rights for you. Below you can find links to help you read and understand this document.

If you wish to dispute information contained in your report, please call us to explain your dispute. You may also provide additional documentation to support your dispute, but it is not required. If you requested your Clarity Credit Report, but not your Clarity Credit Score, you may request and obtain a Clarity Credit Score.

OFAC score and flag values are derived from information maintained by the Office of Foreign Assets Control, a division of the U.S. Department of Treasury. The "Valid Social Security Format" and "Social Security Deceased" values are derived from information maintained by the Social Security Administration (SSA).

The latest information on how to read your Clarity consumer file disclosure can be found at:

https://consumersupport.clarityservices.com/how_to_read_report

The latest information on how to read your Clarity Credit Score can be found at:

https://consumersupport.clarityservices.com/how_to_read_score

Disclaimer: This consumer report may contain personally identifiable information, and may be used only in accordance with all regulatory guidelines.
©2009 - 2024 Clarity Services Inc. All Rights Reserved.

Page 1 of 36

# PLAINTIFF'S EXHIBIT C
## Ms. Washington's Clarity Consumer Disclosure, December 31, 2024
## CreditNinja Tradeline - Excerpt



# PLAINTIFF'S EXHIBIT D
## CreditNinja's Trademark Registration



**PLAINTIFF'S EXHIBIT E**

**CreditNinja.com's Statement: "© 2024 CreditNinja Lending, LLC All Rights Reserved."**

© 2024 CreditNinja Lending, LLC. All Rights Reserved.

## PLAINTIFF'S EXHIBIT F
### Ms. Washington's Clarity Consumer Disclosure, December 31, 2024
### Inquiries - Excerpts

**Inquiries seen by others**

The 'Tracking #' located after 'Date' and 'Time' allows you to associate the data that originated from the same inquiry. For example, when the 'Tracking #' is the same for your name, date of birth and driver's license/state, then all those data elements came from the same inquiry.

Page 15 of 36

| Date/Time/Tracking # | Purpose | Type | Company |
|---|---|---|---|
| 11/20/2024 10:22:23 am EST vb8ccqrdmm | Credit Application | Online Installment Loan | Credit Ninja/FMS |
| 11/20/2024 9:05:27 am EST g51ac271v3 | Credit Application | Online Installment Loan | Credit Ninja/FMS |
| 11/20/2024 9:05:24 am EST 33711n4bf6 | Credit Application | Online Installment Loan | Credit Ninja/FMS |

## PLAINTIFF'S EXHIBIT G
## Ms. Washington's Experian Consumer Disclosure, December 20, 2024
## Inquiry - Excerpt



# PLAINTIFF'S EXHIBIT G
## Ms. Washington's Experian Consumer Disclosure, December 20, 2024
## Inquiry - Excerpt

